IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

WILLIAM MONTGOMERY,

      Plaintiff,

v.

MATTHEW CHERNAK,
MIKE HOWARD,
MATTHEW BROUGH.

      Defendants.

---

## COMPLAINT

---

    Plaintiff, William Montgomery, by and through his attorney, Raymond K. Bryant of the Civil Rights Litigation Group, PLLC, hereby states and alleges, as follows:

### INTRODUCTION

    1.    This is a First and Fourth Amendment civil rights action seeking damages against several police officers' for their misconduct in retaliating against a homeless protester, by unlawfully arresting and prosecuting him for crimes he couldn't have committed, which caused him to be incarcerated, needlessly, during two separate periods of time totaling approximately one month.

    2.    Plaintiff Montgomery had been known as an activist for homeless populations in Fort Collins for some time, which included spending significant time in public protests, advocating for the homeless, and fighting for use of public spaces by the homeless. He was largely considered a troublemaker by the Fort Collins police, as the

1

police answered public nuisance calls by sending police officers to sweep through areas of homeless congregations and disperse people considered to be eyesores. Plaintiff Montgomery was present at one such location – a public plaza located in a public right-of-way on the side of a main road – when police began questioning a homeless man about trespassing in a local 7-11. When Plaintiff asked questions of the officers, criticized them, and then continued to observe them after police told him to leave the area, the officers became determined to punish him. The officers charged him with trespass, disorderly conduct, resisting arrest, and obstruction for simply remaining entering and remaining within the public plaza.  The fence around the public plaza, was precisely one of Plaintiff Montgomery's reasons for being present that day, as the fence had been erected, without authorization, by a private corporation who sought to keep the homeless away from a construction zone nearby. Plaintiff Montgomery sought to spread the word to members of the public and the police by communicating and showing correspondence authored by leadership of the City of Fort Collins who had ordered the fence around the public plaza to be taken down (but which command had not been followed up to that point). The officers – who would have had knowledge that the plaza had, indeed, been a public space for over 20 years – ignored Plaintiff's protests, communication, and the evidence he showed them that proved the land remained public for his and other persons' use, and arrested him anyway.

3.      Plaintiff Montgomery seeks vindication regarding the wrongful allegations made by the officers, and a remedy for the loss of liberty, emotional distress, dignitary injuries, and economic damages he suffered by the violation of his First and Fourth

Amendment rights.

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States, 42 U.S.C. § 1983.

5.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

6.      Venue is proper in the City and County of Denver, State of Colorado, because the incidents and resultant injuries to the Plaintiff giving rise to this action occurred in Fort Collins, Colorado.

## PARTIES

7.      Plaintiff incorporates the preceding paragraphs herein by reference.

8.      Plaintiff William Montgomery was, at all times relevant to the claims set forth below, a resident of the State of Colorado.

9.      Defendant Matthew Chernak was, at all times relevant to the subject matter of this action, employed as a police officer by the Fort Collins Police Department, and acted under color of law in full police uniform. He is identified in his individual capacity.

10.      Defendant Mike Howard was, at all times relevant to the subject matter of this action, employed as a police officer by the Fort Collins Police Department, and acted under color of law in full police uniform. He is identified in his individual capacity.

11.      Defendant Matthew Brough was, at all times relevant to the subject matter of this action, employed as a police officer by the Fort Collins Police Department, and acted under color of law in full police uniform. He is identified in his individual capacity.

12.     Defendant the City of Ft. Collins, Colorado is a municipality established under the laws of Colorado, and is constitutionally responsible for the policies, practices, and training of its police officers, including the Defendant officers pursuant to Section 1983.

## FACTUAL BACKGROUND

13.     Plaintiff incorporates all preceding paragraphs by reference.

14.     Long before January of 2016 (at least 20 years), the City of Fort Collins built a public seating plaza ("public plaza") on a public right-of-way, located between a public sidewalk and a Safeway grocery store, at the 400 block of Remington Street, in Fort Collins, Colorado (also known as the east side of 460 S. College Ave.).

15.     The public plaza area was approximately 50 feet by 20 feet and contained a large, ornate, sculpture-esque, concrete seating bench that ran from the back of the right-of-way area to the sidewalk, and contained multiple group seating locations for public visitors.

16.     The public plaza was held open to the public and was operated and maintained for the benefit of the public by the City of Fort Collins, just as a sidewalk, street, or public park would be.

17.     At some point, the location became regularly used by homeless members of the public who sought a place to congregate, rest, and socialize.

18.     On or before January 11, 2016, some members of the public complained about the appearance of these groups and sought police intervention to disperse those who were drawn there.

19.     Neighbors and other members of the public called Fort Collins police hundreds of times to complain about the appearance of the groups, which complaining persons considered an eyesore. The Fort Collins police received so many telephone calls that they began classifying such calls with a special flag in the police computer system "TRAN" (meaning a call regarding "transients").

20.     Being homeless and/or "transient" is not illegal in the state of Colorado, but Fort Collins police frequently dispatched officers to the scene, anyway, up to three to four times per day, to look for evidence of unlawful activity and to otherwise discourage the type of congregating that complaining persons considered to be an eyesore.

21.     The seating area was well-known by officers of the Fort Collins Police Department – especially those who were responsible for patrolling the area and/or who were regularly dispatched to the location. Through these repeated calls, patrols, roll-call meetings, supervisory instructions, and repeated contacts, officers knew that the area was within a public right-of-way and was operated and maintained for use by the public – even for "transients."

22.     On information and belief, each of the Defendant officers knew the area well, knew it was public property in a public right-of-way, and knew (or should have reasonably known) that it could not be illegal for any member of the public to be present there.

23.     At some point, on or before January 11, 2016, a company called Loveland Commercial, LLC who owns several commercial properties in the area, was constructing buildings across the street and/or in an adjacent area separate from the public plaza. The

company also became bothered by "transients" in the public plaza. They took matters into their own hands by building a six-foot chain-link fence around the public plaza to block the bothersome persons from accessing or congregating in the public space.

24.     Loveland Commercial knew from its long history of construction projects in the Loveland and Fort Collins area that a city permit was required to build an obstruction around public property, but ignored the requirement.

25.     However, between January 11 and 19, 2016, a well known author, David Sucher, visited the location to gather information about the city for a new book he was writing, "City Comforts – How to Build an Urban Village."

26.     Fort Collins city officials were embarrassed that the public plaza had been fenced-in, and that erection of the fence had created an illegal barrier that blocked access to the public plaza.

27.     On January 19, 2016, Ted Shepard, Chief Planner for the City of Fort Collins, emailed Loveland Commercial, LLC and informed key board members of the corporation that the city was "quite surprised" to see the newly-installed six-foot high chain link fence around the gathering space. Shepard explained that while "society in general has issues with individuals with different lifestyles who inhabit our City…a fence [is not] the solution." Mr. Shepard further elaborated that without application for some kind of amendment to their authority to erect construction there, the fence is likely non-compliant with municipal ordinances and illegal.

28.     On January 26, 2016, Rob Mosbey, Chief Construction Inspector for the City of Fort Collins, responded to the email-chain discussion (in which he had been

copied by the Chief Planner) and communicated in clear and unambiguous language that the placement of the fence blocked public property, was an illegal encroachment, and must be removed.

29. Between January 11 and January 26, Plaintiff Montgomery had become aware of the fence blocking homeless persons from congregating in the public space, as he had sought to utilize the public plaza many times in the past. When he saw that the plaza was blocked by the chain-link fence, he began researching its legality and purpose. Plaintiff contacted Chief Inspector Mosbey.

30. On or about January 26, 2016, Chief Inspector Mosbey informed Plaintiff Montgomery that the public plaza remained public property within a public right-of-way, that the chain-link fence was an illegal obstruction, and that Inspector Mosbey had ordered Loveland Commercial to remove the fence.

31. On or about January 27, 2016, Chief Inspector Mosbey provided to Plaintiff Montgomery a paper copy of the email discussion, pertaining to the city representative's conclusion that the area remained public property, that the fence was an illegal obstruction, and that the fence must be removed.

32. With proof of Inspector Mosbey's conclusions and orders regarding the illegal fence, Plaintiff Montgomery began frequenting the public plaza again. While the fence continued to obstruct access, Plaintiff Montgomery climbed the fence each time he visited to gain access to the public plaza. Plaintiff Montgomery not only sought to use the public space, himself, but also sought to spread the word that the fence was illegal and

that the space continued to remain a place where public visitors should be permitted access and public use.

33.     On January 28, 2016, Defendant Officers Chernak, Howard, and Brough were dispatched to a 7-11 area located at 430 Remington Street regarding a possible trespass complaint pertaining to a different homeless person.

34.     Plaintiff Montgomery was present, nearby, when police began questioning the suspect. Plaintiff Montgomery overheard the officers' discussion and began questioning why the officers were asking this man questions and whether the officers had reasonable suspicion for, what appeared to be, a consensual encounter growing into a contentious police detention.

35.     Police viewed Plaintiff's questions and criticisms as an annoyance. The officers responded to Plaintiff's speech with a directive to leave the area so that the officers could continue with the police contact, uninterrupted by such criticism.

36.     Plaintiff complied with the officers' request. Plaintiff climbed the fence around the public plaza, and stood peaceably within the public seating area, while continuing to observe the police interaction for any evidence of mistreatment of the homeless man. There, he thought, he could not reasonably be perceived as interfering with the police investigation since a fence physically separated him from the officers. Plaintiff also saw his presence within the public plaza as an opportunity to raise awareness to the issues pertaining to the illegal fence on public land.

37.     The Defendant officers took offense to Plaintiff's criticism of the officers and his continued observation of the police interaction after they told him to leave, which

they viewed as a challenge to their authority. The Defendant Officers decided to retaliate by manufacturing a reason to arrest Plaintiff Montgomery.

38.     The officers saw the fence surrounding the public plaza and discussed and/or reasoned that the fence would provide them an illusory justification to assert that Plaintiff was trespassing.

39.     The officers told Plaintiff Montgomery that he was trespassing and to provide his name and date of birth. Plaintiff questioned the officers' determination that he was trespassing by telling the officers that he was allowed to be present in the public plaza because it was part of a public park and/or right-of-way, that the fence was an illegal encroachment designed to discriminatorily keep homeless people out, and that he had spoken to the city's chief inspector and confirmed that he was allowed to be present there.

40.     After explaining that the area continued to remain public property, Plaintiff provided his name, and continued explaining that he had a right to be in the public plaza because the fence was not a city fence and that it had been erected by a private corporation illegally. A moment later, Plaintiff Montgomery overheard his date of birth transmitted over police radio and asked "is that my birthdate I just heard," which was meant to confirm his date of birth for the officers.

41.     One of the Defendant officers told Plaintiff that he was going to be placed into custody and charged with criminal trespass. All three Defendant officers asked Plaintiff to climb back over the fence so that they could handcuff him.

42. Plaintiff protested the officers' requests and continued to provide information to the officers indicating that he was not breaking the law. Plaintiff informed the officers that he had proof in the form of an email from the City Inspector's Office proving that what he was telling the officers the truth about the nature of the property and his presence there.

43. The officers became louder and more aggressive, ordering Plaintiff to climb back over the fence so that they could place handcuffs on him. Of course, Plaintiff had no legal obligation to climb over the fence or to otherwise follow the officers' requests. Plaintiff had done nothing criminal. He remained legally free to ignore the requests.

44. Plaintiff increased his voice to match the officers so that they would hear his protests, assertions of innocence, and proof that he was not breaking any law. It soon became clear that the officers were not listening to or responding to Plaintiff's attempts to communicate.

45. Soon after, Plaintiff yelled out to his brother, who was parked across the street in a white van observing the incident, asking him to bring the email proof for the officers to see.

46. Plaintiff's brother delivered the printed email that had earlier been provided by Inspector Mosbey to Defendant Brough.

47. Defendant Brough read, at least, part of the email. As a result, he knew or should have known that the email provided exculpatory evidence demonstrating that Plaintiff could not have been trespassing by being present in the public plaza. Defendant

Brough would have seen that the paper copy of the email had involved several members of the City of Fort Collins, with official Fort Collins email addresses, and which included communications about the public nature of the public plaza, the encroachment of the illegal fence, and the order to Loveland Commercial LLC to take down the fence.

48.     Defendant Brough handed the email to Defendant Chernak.

49.     Defendant Chernak and Howard, together, walked away from the public plaza, around the corner, so as to leave the audible range of Plaintiff Montgomery and nearby witnesses.

50.     On information and belief, the officers spoke about the situation, Plaintiff Montgomery's claims, the email, and other related matters. The officers, obviously appearing visibly upset and annoyed, conspired to charge Plaintiff with additional crimes that were not supported by probable cause, including obstruction, resisting arrest, and disorderly conduct. The officers sought to charge Plaintiff Montgomery with anything and everything that they believe they could illusorily justify to their supervising sergeant, in order to punish Plaintiff for his speech, criticism, and perceived challenge to the Defendant officers.

51.     Shortly thereafter, another officer arrived with bolt cutters and cut open the fence surrounding the public plaza. The Defendant officers then cooperatively arrested and took Plaintiff into custody without incident.

52.     Plaintiff did not physically resist or otherwise fight with the officers as they seized him, placed handcuffs on him, placed him into a police vehicle, and transported him to jail. Plaintiff only voiced his concerns to officer and surrounding

persons that he was being wrongfully arrested and taken into custody, in protest of the wrongful arrest, and so that others might witness the unlawful conduct of the Defendant officers.

53.     As Defendant Chernak drove Plaintiff to the police station, Plaintiff asked Defendant Chernak why he didn't act on the exculpatory email evidence that his brother provided to the officer regarding the public plaza. Defendant Chernak responded that "you were being too loud for me to read it." Plaintiff began explaining again that the email showed that he had spoken to Inspector Mosbey the day before and that the email proved the area was public property upon which Plaintiff could not possibly have trespassed.   Plaintiff then verbally protested the arrest and criticized the officer for wrongfully arresting him without lawful basis.

54.     Approximately 45 minutes later, Defendant Chernak filed a warrantless arrest affidavit asserting that Plaintiff committed the crimes of Trespass, Obstruction, Resisting Arrest, Disorderly Conduct, and Violation of Bail Bond – without possessing reasonably trustworthy information indicating that he committed any of those crimes, in contradiction of the information the officers knew about the nature of the property, and while ignoring the email and other communications Plaintiff Montgomery had provided, which demonstrated public officials from the city of Fort Collins had taken official action to preserve public access to the property. The officers charged Plaintiff in retaliation for the trouble Plaintiff gave them, via his protests and speech.

55.     On information and belief, the officers met and discussed the charges, and agreed that they would assert false factual information that would illusorily support the

wrongful charges, including *inter alia*, that Plaintiff (a) told the officers that he believed the public plaza was owned by the nearby grocery store, (b) attempted to use the fence as an obstruction to keep officers from arresting him, (c) yelled at the top of his lungs to wake/disturb neighbors, (d) resisted arrest, and (e) violated the terms of an earlier bond condition by not remaining lawful.

56.    Afterward, the officers drafted police reports including the false and misrepresentative information in order to cause Plaintiff to be detained, to cover up and conceal their own abuse of authority, and to continue to punish Plaintiff for what they perceived as a challenges to their authority and annoyance of the speech of the protester.

57.    As a result of the wrongful charges, Plaintiff spent three days in jail, from January 28-30, 2016.

58.    On or about February 1, 2016, in coordination with the prosecutor, Defendant Chernak filed an additional affidavit in Larimer County Court, for the purposes of supporting the charge of violation of bail bond condition, in order to cause the court to revoke Plaintiff's bond in an earlier case that had involved Plaintiff's protesting for the homeless. The affidavit asserted that Plaintiff had committed the five offenses listed in the case, including violation of bail bond conditions, and that he would act as a witness and provide all discoverable materials in support of the charges.

59.    During the criminal prosecution, Plaintiff continued to protest his innocence, contacting the prosecutor multiple times and/or leaving voicemail messages that explained in detail how he could not have committed the crimes alleged. Plaintiff

offered the exculpatory emails that confirmed he could not have committed the crimes alleged and that the officers acted unreasonably in arresting him without probable cause.

60.     The prosecutor was influenced by the Defendant officers' false statements and ignored the exculpatory import of the Mosbey email that had been provided. As a result, the prosecution dragged on, unnecessarily, for almost two years.

61.     On information and belief, the prosecutor communicated with the Defendant officers through in-person meetings and email, as is typical of cases involving police complaining witnesses. The Defendant officers continued to assert false facts and to otherwise support the criminal prosecution through assertions that they witnessed, in person, the crimes that were, allegedly, committed.

62.     On February 8, 2016, Tammy Fisher, Court Services Specialist II for the Larimer County Pretrial Services Program, was influenced by Defendant Chernak's (and the other Defendant Officers') assertions that Plaintiff failed to remain lawful. She cited the Defendant Officers' assertions of criminal activity as a basis for noncompliance with Plaintiff's bond conditions in another case, and, petitioned the court to revoke Plaintiff's bond.

63.     On or about February 16, 2016, Loveland Commercial, LLC, removed the fence around the public plaza, as had been ordered by Inspector Mosbey.

64.     On or about February 18, 2016, the criminal court granted the petition to revoke Plaintiff's bond based on the Defendant Officers' assertions of criminal conduct. As a result, a warrant was issued for Plaintiff Montgomery and Plaintiff was incarcerated from March 25-April 19, 2016.

65.     Eventually, the prosecutor reviewed the many messages Plaintiff had left describing how he was innocent of the crimes alleged and also reviewed the exculpatory email Plaintiff had provided. While the information suggested to the prosecutor that Plaintiff was likely innocent of the crimes asserted by the Defendant officers, the Defendant officers did not support dismissal of the case. On information and belief, this created a conflict between the arresting officers and the prosecutor, which was left unresolved for some time.

66.     On or about August 31, 2017 the prosecutor dismissed the charge of trespass against Plaintiff Montgomery.

67.     On or about November 16, 2017, the prosecutor dismissed all remaining charges against Plaintiff Montgomery stemming from the case.

### FIRST CLAIM FOR RELIEF
*42 U.S.C. §1983 - Retaliation for Plaintiffs' First Amendment Expression*
**(Against All Individual Defendant Officers)**

68.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

69.     At the time the Defendant Officers took action to seize and detain Plaintiff Montgomery, he had committed no crime in the deputy's presence; he had only expressed verbal criticism and questioning of the officers, and otherwise entered public land.

70.     The speech, criticism, profanity, and/or the act of entering the public plaza that the Defendant Officers witnessed could not have reasonably been construed to be a crime or warrant arrest.

71.     The Defendant Officers took action to seize, detain, prosecute, and to

otherwise injure, humiliate, and cause emotional distress to Plaintiff Montgomery, in order to retaliate against Mr. Montgomery for his protected, First Amendment, expressions, to punish Plaintiff for appearing to challenge the officers, and to illusorily justify and/or cover up their misconduct.

72.     The actions of the Defendant Officers caused Plaintiff Montgomery injury that would chill a person of ordinary firmness from engaging in protected First Amendment expression. Plaintiff was yelled at, seized, arrested, charged with crimes he did not commit, prosecuted, jailed, and otherwise suffered loss of liberty and emotional distress.

73.     Such actions by the Defendant Officers, while acting under color of law, deprived Plaintiff of the rights, privileges, liberties, and immunities, secured by the Constitution of the United States of America, including the right to free speech guaranteed by the First Amendment, and which is made actionable pursuant to 42 U.S.C. 1983, which actions proximately resulted in the injuries described above.

### SECOND CLAIM FOR RELIEF
*42 U.S.C. § 1983 Fourth Amendment Violation – Unlawful Arrest and Detention*
**(Against All Individual Defendant Officers)**

74.     Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

75.     The Defendant officers caused the arrest, detention, and confinement of Plaintiff Montgomery on January 28, 2016, without possessing probable cause to believe that he had committed the crimes alleged.

76.     Even if the officers had a suspicion that Plaintiff could have, arguably,

committed trespass, or any other crime, such suspicion was vitiated by information that the officers knew, had obtained, or to which they had ready access, before the arrest, immediately following the arrest, and/or within a reasonable time during which Plaintiff was being detained in the detention facility from January 28-30, 2016.

77.     Even if the officers did not believe Plaintiff or the evidence provided by Plaintiff's brother, pertaining to the nature of the public property at issue during the arrest, the officers failed to conduct a reasonable investigation into the property, the exculpatory email, or the alleged crimes committed by Plaintiff.

78.     When reporting the basis/probable cause for Plaintiff Montgomery's seizure and arrest, the Defendant officers asserted information that they knew to be objectively doubtful, untrue, exaggerated, and/or false, to ensure that Plaintiff would be detained and/or prosecuted.

79.     Based upon the totality of the information the Defendant Officers collected, or had access to, and the circumstances in which they obtained it, no reasonable police officer would have believed that he had sufficient reasonably trustworthy information necessary to fairly believe Plaintiff Montgomery had committed the crimes alleged.

80.     The intentional and/or reckless conduct of the Defendant Officers, acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983, including the unlawful seizure and detention that followed, and which proximately caused Plaintiff loss of liberty and emotional harms.

## THIRD CLAIM FOR RELIEF
### *(42 U.S.C. § 1983 – Fourth Amendment Deprivation - Wrongful and Malicious Prosecution*
### (Against All Individual Defendant Officers)

81.     Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

82.     The Defendant Officers did not have probable cause to believe Plaintiff Montgomery had committed the crimes of Trespass, Obstruction, Resisting Arrest, Disorderly Conduct, and/or Violation of Bail Bond, but criminally charged him, exaggerated their version of the events, and made false statements that ensured his prosecution for such crimes, anyway.

83.     The Defendant Officers knew, should have known, and/or had received, read, taken custody of, and/or been informed of, exculpatory information in the form of an email communication and/or the transmission of information indicating that the fenced-in area surrounding the public plaza was public property, that Plaintiff was allowed to be present within, and/or that it could not be a violation of law for Plaintiff to climb the fence and/or otherwise watch/observe the Defendants from within the public plaza area.

84.     The Defendant Officers knew or should have known that claiming they saw Mr. Montgomery trespass, resist, and obstruct the officers (when attempting to perform certain duties) would provide false evidence that would result in his detention and criminal prosecution.

85.     Despite this knowledge, the Defendant Officers gave oral and written statements to other law enforcement officers, the prosecutor, and the court asserting that

Plaintiff Montgomery had unlawfully entered into private land, resisted and obstructed the officers, and yelled to wake neighbors, in order to retaliate against and/or punish Plaintiff, and to attempt to cover up, conceal, and/or otherwise superficially justify Defendants' misconduct.

86.    The officers failed to conduct reasonable investigation into plaintiff's assertions about the nature of the property and the email concerning the nature of the property in retaliation for Plaintiff's First Amendment expressions, and because they knew that such investigation would reveal the undeniable and objective truth about Plaintiff's assertions, of which the officers knew they would have to detail in supplemental reports, which would exculpate Plaintiff of the crimes asserted.

87.    In furtherance of the conspiracy to maliciously cause Plaintiff to be wrongly prosecuted, Defendant Chernak knowingly omitted from his probable cause affidavit exculpatory information pertaining to the arrest, information the officers would have known about the nature of the public plaza, and, information communicated and otherwise presented to the officers in the form of email communications by city officials.

88.    Three days after the arrest, Defendant Chernak submitted an additional affidavit alleging that he had witnessed the crimes originally alleged, in order to cause Plaintiff's bond in another case to be revoked, so that Plaintiff would be re-arrested and re-incarcerated.

89.    The Defendant Officers' allegations, misrepresentations, and omissions caused Plaintiff's repeated incarcerations, bond revocation, and the long and drawn out wrongful criminal prosecution.

90.     The criminal charges against Plaintiff Montgomery were ultimately dismissed, in circumstances suggestive of Plaintiff's innocence.

91.     The actions as described herein, under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983, and which proximately caused loss of liberty, emotional distress, and other injuries associated with wrongful prosecution.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in his favor and against all Defendants for compensatory damages, as referenced above, punitive damages against the individual Defendants, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees, as allowed by statute or as otherwise allowed by law, and for any other and further relief that this Court shall deem just and proper.

**PLAINTIFF DEMANDS TRIAL TO
A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 28th day of January, 2018.

Civil Rights Litigation Group, PLLC

_s/    **Raymond K. Bryant**_____
Raymond K. Bryant
1543 Champa St., Suite 400
Denver, CO 80202
P:  720-515-6165
F:  720-465-1975
Raymond@rightslitigation.com