IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00217-REB-KLM

WILLIAM MONTGOMERY,

    Plaintiff,

v.

MATTHEW CHERNAK, *et al.*,

    Defendants.

___

**DEFENDANTS' MOTION TO DISMISS**
___

Defendants Matthew Chernak, Mike Howard and Matthew Brough, through their counsel, respectfully submit this Motion to Dismiss, as follows:[1]

## STANDARD OF REVIEW

A Fed R. Civ. P. 12(b)(6) motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. … Factual allegations must be enough to raise a right to relief above the speculative level." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 545, (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." ***Id.*** at 570.

---

[1] Paragraph 12 of the Complaint refers to the City of Fort Collins, Colorado as a "defendant" in cursory fashion, although there is no reference to the City of Fort Collins in the caption, a summons was not issued and service was not made upon it. More importantly, no allegations are directed toward the City of Fort Collins in the Complaint and the Supreme Court explicitly rejected the notion of governmental entity liability based on either a *respondeat superior* or vicarious liability theory. ***Monnell v. New York City Dep't of Social Services***, 436 U.S. 658, 694 (1978). This Court should disregard any attempt by Plaintiff to assert claims against the City of Fort Collins.

## SUMMARY OF COMPLAINT'S ALLEGATIONS[2]

After Plaintiff inserted himself into Defendant officers' encounter with another individual, they directed him to leave the area so they could continue their investigation. [ECF 1, ¶2, 33, 35.] Plaintiff climbed a fence to stand inside a nearby strip of land between a Safeway grocery store and the public sidewalk, so he could continue monitoring the conversation between the officers and the man.[3] [*Id.*, ¶ 14, 36.] The officers told Plaintiff he was trespassing in the fenced area, and he said he could be inside the fence because the area was actually a "public park and/or right-of-way," and the city's chief inspector told him the fence was illegal. [*Id.*, ¶39.] The officers informed Plaintiff he was going to be arrested for trespass and requested he climb back over the fence to be handcuffed. [*Id.*, ¶41.] Plaintiff refused and protested his belief the fence was illegal. Ultimately, bolt cutters were obtained to cut open the fence and take Plaintiff into custody. [Id., ¶51.] Defendant Chernak filed a warrantless arrest affidavit, asserting he committed the crimes of trespass, obstruction, resisting arrest, disorderly conduct, and violation of bail bond. [Id., ¶54.] Plaintiff alleges the arrest caused the Pretrial Services Program to revoke his bond in another matter, resulting in a separate warrant and incarceration. [Id, ¶62, 64.]

---

[2] For this motion only, Plaintiff's allegations are accepted as true. Defendants reserve the right to dispute each factual allegation contained in the Complaint in any future proceedings.

[3] Plaintiff alleges the chain-link fence had been placed around this piece of land two weeks earlier, on January 11, by a private company. [Id. at ¶23.] The Complaint alleges a series of emails between the company, the Chief Planner for the City of Fort Collins (Ted Shepard) and Chief Construction Inspector for the City of Fort Collins (Rob Mosbey) occurred between January 19 and 26, 2016, wherein the city officials acknowledged the fence "blocked public property" and did not comply with local ordinances. [Id. at ¶27-28.] Plaintiff also separately "began researching [the] legality and purpose" of the fence, and contacted Chief Inspector Mobey. [Id. at ¶29.] Mosbey informed both the private company and Plaintiff on January 26, 2016 the area between the building and the sidewalk was actually a public right-of-way and the company needed to remove its fence. [Id. at ¶28, 30.] Moseby provided Plaintiff a paper copy "of the email discussion" on January 27, 2016, although the Complaint does not describe the exact participants of the discussion, number of emails included, or specific contents of the email. [Id. at ¶31.]

Following his arrest, Plaintiff left "many messages" for the prosecutor "describing how he was innocent of the crimes alleged and offering both the alleged emails and numerous explanations of them." [Id. at ¶59, 65.] "On or about August 31, 2017[,] the prosecutor dismissed the charge of trespass" and then dismissed all remaining charges against Plaintiff stemming from the incident on November 16, 2017. [Id. at ¶66-67.]

## ARGUMENT

**I.     Plaintiff fails to allege personal participation by each Defendant.**

At the pleading stage, it is not the defendants' or the Court's responsibility to guess at plaintiff's claims. ***Twombly***, 550 U.S. at 555***; Robbins v. State of Oklahoma***, 519 F.3d 1242, 1248–49 (10th Cir. 2008). To establish §1983 liability in an individual capacity, "'the plaintiff must establish a deliberate, intentional act' on the part of the defendant 'to violate [the plaintiff's legal] rights.'" ***Porro v. Barnes***, 624 F.3d 1322, 1327-28 (10th Cir. 2010). It is not sufficient to refer collectively to a group of defendants, without specifying the individual activities of each. ***Robbins***, 519 F.3d at 1250. Federal pleading standards require Plaintiff to also establish personal participation in conduct violative of his Constitutional rights. ***Fogarty v. Gallegos***, 523 F.3d 1147, 1162 (10th Cir.2008).

The Complaint is devoid of any allegations explaining, in more than conclusory terms, how the individual Defendants are each alleged to personally have caused any deprivation of a federal right. Plaintiff alleges claims collectively against "the officers" or "Defendant officers" but does not connect any specific defendant to specific conduct at the scene of the arrest. *See, e.g.,* Complaint at ¶34 ("The officers responded… with a directive to leave the area"); ¶39 ("The officers told Plaintiff Montgomery that he was trespassing and to provide his name and date of birth."); ¶41 ("One of the Defendant

3

officers told Plaintiff that he was going to be placed into custody and charged with criminal trespass.") Such group pleading is not sanctioned by FED. R. CIV. P. 8(a). **Robbins**, 519 F.3d at 1242 (dismissing claims where complaint used either collective term "Defendants" or a list of the defendants without distinction as to what acts were attributable to whom).

Plaintiff suggests Defendants mere presence at the arrest scene renders them all "arresting officers" subject to any constitutional violation he attributes to his arrest. The law does not support this interpretation. To state a claim against any Defendant, Plaintiff must articulate the constitutional right and the conduct of each respective officer that violated that right *with specificity*, and conclusory allegations are not sufficient. **Wise v. Bravo**, 666 F.2d 1328, 1333 (10th Cir. 1981). The only allegation directed at Defendant Brough is that he received a printed email from Plaintiff's brother, read part of it, and handed it to Defendant Chernak. [ECF 1, ¶46-48.] Regarding Defendant Howard, Plaintiff merely alleges he had a conversation with Defendant Chernak outside of Plaintiff's audible range. [Id, ¶49.] None of these acts could reasonably be construed to demonstrate a constitutional violation. Without designation of personal participation by each Defendant linked to each alleged constitutional violation, Plaintiff cannot sustain his claims.

II.     **Plaintiff's First Amendment retaliatory arrest claim fails**.

   A. Elements of a First Amendment retaliation claim

The Tenth Circuit has traditionally required the following elements for a First Amendment retaliation claim: (1) plaintiff engaged in protected activity; (2) defendant's actions caused plaintiff to suffer an injury that would reasonably have a chilling effect on the exercise of protected activity; and (3) defendant's action was substantially motivated as a response to plaintiff's exercise of constitutionally protected conduct. **Keough v.**

4

***Packard***, No. 13-cv-2485-REB-KLM, 2014 U.S. Dist. LEXIS 128671, *14 (D. Colo. Aug. 25, 2014) "In addition, in 2006, the Supreme Court settled a circuit split and held that where the retaliatory action being taken was a criminal prosecution, a plaintiff bringing suit under 1983 must plead and prove a fourth element: lack of probable cause for the allegedly retaliatory prosecution." ***Id.*** at *14-15, *citing* ***Hartman v. Moore***, 547 U.S. 250, 261-66 (2006). "*Hartman* thus placed upon the plaintiff the burden of pleading, and then proving, that there was no non-retaliatory reason for the prosecution." ***Id.***

The Tenth Circuit in 2011 concluded *Hartman* did not apply to a claim for retaliatory *arrest*; however, the Supreme Court granted certiorari and reversed. *See* ***Reichle v. Howards***, 566 U.S. 658, 665-670 (2012); ***Howards v. McLaughlin***, 634 F.2d 1311, 1148 (10th Cir. 2011). The Tenth Circuit summarized ***Reichle***, as follows:

> The Court declined to decide "whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest." *Id.* at 2093. Instead, it held this court erred in concluding the law was clearly established in June 2006. *See id.* at 2094-95, 2097. Specifying that "the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause," the Court noted that it "has never held that there is such a right." *Id.* at 2094. It further stated that in June 2006, "*Hartman*'s impact on the Tenth Circuit's precedent governing retaliatory arrests was far from clear. Although the facts of *Hartman* involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of *Hartman* also applied to arrests." *Id.* at 2095. "[F]or qualified immunity purposes, at the time . . . it was at least arguable that *Hartman*'s rule extended to retaliatory arrests." *Id.* at 2096. Accordingly, the Court held that the defendant officers were entitled to qualified immunity. *Id.* at 2097.

***Wilson v. Vill. Of Los Lunas***, 572 Fed. Appx. 635, 643 (10th Cir. July 22, 2014). Based on ***Riechle***, courts within the Tenth Circuit have repeatedly granted qualified immunity for retaliatory arrest claims where probable cause was present, based upon the uncertainly

for officers rooted in the Supreme Court's acknowledgement the law is not clearly established. *Id.*; **Moral v. Hagen**, 553 Fed. Appx. 839, 849 (10th Cir. 2014). Most recently, the Supreme Court granted certiorari and heard oral arguments on February 27, 2018 in **Lozman v. City of Riviera Beach Florida**, 679 Fed. Appx. 979 (11th Cir. 2017), to consider the whether the jury's determination plaintiff's arrest was supported by probable cause defeated his First Amendment retaliatory arrest claim as a matter of law.

    B. <u>The Complaint demonstrates probable cause existed for Plaintiff's arrest.</u>

The Complaint fails to allege whether Plaintiff's claim is one for retaliatory arrest or prosecution, further demonstrating its failure to comply with requisite pleading standards. *See* **Twombly**, *supra*. Nonetheless, Plaintiff's references to multiple contacts with "the prosecutor" to protest his innocence, provision of "the exculpatory email" to him or her, and the prosecutor's dismissal of the charges render a retaliatory prosecution claim against the Defendant officers too attenuated from his arrest. [ECF 1, ¶65-67.] **Barham v. Town of Greybull Wyo.**, 483 Fed. Appx. 506, 509 (10th Cir. 2012) (finding judge's independent probable cause determination breaks chain of causation between unlawful arrest and subsequent prosecution).

The only claim which could be construed from the Complaint, then, is for retaliatory arrest. As discussed above, the most likely interpretation from present caselaw is that lack of probable cause is required for a retaliatory arrest claim.[4] *See* **Wilson**, *supra*; **Moral**, *supra*; **Lozman**, *supra*; **Galarnyk v. Fraser**, 687 F.3d 1070, 1076 (8th Cir. 2012).

A warrantless arrest is permissible when an officer has probable cause to believe

---

[4] Even if this Court does not determine probable cause as a necessary element for a retaliatory arrest claim, the uncertainty demonstrates qualified immunity is appropriate. *See* Section II, C, below.

a person committed a crime. ***Cortez v. McCauley,*** 478 F.3d 1108, 1115 (10th Cir. 2007). This is true even if the crime is a minor offense. ***Atwater v. City of Lago Vista***, 532 U.S. 318, 354 (2001). An arrest is lawful if the officer had probable cause to believe a crime - any crime- occurred. ***Devenpeck v. Alford***, 543 U.S. 146, 152-53 (2004). Although an officer must investigate easily accessible facts related to the probable cause determination, he need not conduct a mini-trial before effectuating an arrest. ***Cortez,*** 478 F.3d at 1117.

Plaintiff portrays himself as an innocent bystander targeted by Defendants for alleged activism, but his own allegations demonstrate probable cause for numerous criminal offenses. He inserted himself into officers' response to the 7-11 trespass complaint to such a degree he became an obstacle to the investigation and was told to leave the area.[5] [ECF 1, ¶33-34.] Instead, he climbed the nearby fence, so he could "continue to observe the police interaction." [Id., ¶39.] Officers saw him climb the fence and concluded he was trespassing.[6]

Plaintiff repeatedly asserts, in a purely conclusory fashion that "[o]n information and belief," each of the Defendant officers knew the fenced area was "public property."

---

[5] C.R.S. § 18-8-102 provides "[A] person commits obstructing government operations if he intentionally obstructs, impairs, or hinders the performance of a governmental function by a public servant, by using or threatening to use violence, force, or physical interference or obstacle."

Fort Collins Municipal Code Section 17-63 states "No person shall knowingly obstruct, impair or hinder any peace officer . . . acting under the color of his or her official authority to enforce the law or perform an official duty by the use or threat of violence, force, physical interference or obstacle, or by knowingly providing false or misleading information to any such officer, employee or official." And "When a peace officer …, acting under the color of his or her official authority, is enforcing the law or performing an official duty, no person shall, after having been ordered by said officer to move on and away from the scene of the officer's activity, knowingly remain in the officer's presence or engage in conduct that disrupts, obstructs, impairs or hinders the officer's enforcement of the law or the performance of his or her official duty."

[6] C.R.S. 18-4-503 provides "A person commits the crime of second degree criminal trespass if such person [u]nlawfully enters or remains in or upon the premises of another which are enclosed in a manner designed to exclude intruders or are fenced[.]"

7

[*See* Id., ¶22, 38, 54.] No factual basis is provided for these conclusory statements; to the contrary, Plaintiff's own allegations demonstrate their implausibility. Plaintiff alleges the fence was erected by the private company without a permit on January 11, 2016. [Id., ¶23-24.] Plaintiff had to do research to determine the legality and purpose of the fence, as information about the fence was not readily identifiable. [Id, ¶29.] It took multiple emails between the City's Chief Planner, Chief Construction Inspector and the private company to ascertain the legality of the fence and, it was not until January 26, 2016 that the company was informed to remove the fence. [Id., ¶27-28.] Plaintiff received some emails on January 27, 2016, and armed with this information, he climbed the fence *the very next day* when he encountered officers on January 28, 2016. [Id., ¶33, 36.] Accepting these facts as true, it strains credulity to expect Defendant officers to have known of the alleged illegality of the fence just two days after the City's Chief Inspector made such determination and notified the private company. *See* **Williams v. Town of Greenburgh**, 535 F.3d 71 (2d Cir. 2008) ("a mistake about relevant facts – in this case, the adequacy of the [trespass] warning [sign] – does not undermine the existence of probable cause").

Upon witnessing Plaintiff climb the fence, which would constitute a crime to anyone who had not learned of the fence's "illegality" in the preceding two days, Defendant officers asked Plaintiff to provide his name and date of birth. [ECF 1, ¶39.] Plaintiff acknowledges he refused to provide his date of birth, instead overhearing the officers figuring it out by radio when they reported his name to dispatch. [Id., ¶39-40.] Plaintiff acknowledges he ignored the command to climb back over the fence, *even after being told he was being arrested.* [Id., ¶41-42.] He admits he "increased his voice to match the

officers," which he characterizes as "loud and aggressive."[7] [Id., ¶43, 44.] Indeed, Defendant Chernak later told him, "you were being too loud for me to read [the emails]." [Id., ¶53.] Plaintiff also "yelled out to his brother" (who just happened to be sitting in a van across the street), summoning another individual to the scene, further obstructing the arrest process and reasonably placing the officers in a heightened defensive posture. [Complaint, ¶45.] Plaintiff's refusal to comply with the order to return over the fence to be arrested continued until another officer had to be summoned to the scene with bolt cutters to damage the property and cut the fence open so officers could detain him. [Id., ¶51.] Throughout this disturbance, Plaintiff continued "voicing his concerns" to "surrounding persons" in protest of his arrest. [Id., ¶2, 52.] These facts plainly demonstrate probable cause for trespass, obstructing a peace officer and disorderly conduct, for which Plaintiff was charged, in addition to property damage and other offenses, for which he was not.

While ignoring Plaintiff's own criminal behavior, the Complaint seeks to impose expectations upon officers that are not only unsupported in the law, but are absurd - that they know information released by the City Inspector to private parties two days prior; credit the unauthenticated, potentially fraudulent emails produced on scene by a nameless man in a white van parked nearby; and ignore criminal acts brazenly performed in their presence. To the contrary, rather than immediately publicly "protesting," Plaintiff could have returned over the fence at the first request and chose to either litigate the legality of the fence in civil court or through the criminal process if he received a trespass

---

[7] C.R.S. 18-9-106 states "A person commits disorderly conduct if he or she intentionally, knowingly, or recklessly [m]akes a coarse and obviously offensive utterance, gesture, or display in a public place and the utterance, gesture, or display tends to incite an immediate breach of the peace; or [m]akes unreasonable noise in a public place or near a private residence that he has no right to occupy.

9

citation. An arrestee's response to even "an invalid arrest or *Terry* stop may constitute independent grounds for arrest." ***U.S. v. Dawdy***, 46 F.3d 1427, 1431 (8th Cir. 1995), *citing* ***U.S. v. Waupekenay***, 973 F.2d 1533, 1538 (10th Cir. 1992). Plaintiff's bald assertion probable cause was lacking is an unsubstantiated legal conclusion which fails to state a claim. ***Keough***, 2014 U.S. Dist. LEXIS 128671, *20-21 (collecting cases) (granting qualified immunity where retaliatory prosecution claim failed to demonstrate absence of probable cause). Also, his other allegations demonstrate the existence of probable cause to for criminal charges, thus negating his retaliatory arrest claim. *Id*. at *21-27.

In addition to his failure to demonstrate probable cause, the allegations demonstrate Defendants' did not cause Plaintiff to suffer an injury that had any chilling effect on his exercise of the alleged protected activity, as he continued to protest the fence even after his arrest.  [ECF 1, 52, 59, 65.] Moreover, Plaintiff fails to allege sufficient facts his arrest and subsequent charges were substantially motivated by his criticism of Defendants' activities, as the Complaint offers nothing more than conclusory allegations about the reason for Plaintiff's arrest. Because the Complaint offers facts to show officers had probable cause to arrest Plaintiff unrelated to his protected activity, and contains no well-pled allegations of an unlawful motivation for arrest by officers, Plaintiff has failed to state sufficient facts to meet this prong of his First Amendment retaliation claim.

C. <u>Defendants are entitled to qualified immunity.</u>

Qualified immunity protects governmental officials from civil liability as long as their conduct does not violate clearly established Constitutional rights of which a reasonable person would have known. ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). When a defendant pleads the defense of qualified immunity, a plaintiff bears a heavy two-part

burden of proving (1) the defendants' actions violated a constitutional right, and (2) the right was clearly established at the time of the conduct at issue. **Mick v. Brewer**, 76 F.3d 1127, 1134 (10th Cir.1996). To survive dismissal, plaintiff must show the right was "clearly established" in a "particularized" sense. **Wilson v. Meeks**, 52 F.3d 1547,1552 (10th Cir. 1995). "[F]or a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." ***Id.***

As described *supra*, the Tenth Circuit has repeatedly granted qualified immunity for retaliatory arrest claims where probable cause was present, recently noting the uncertainty in the law governing retaliatory arrests. **Wilson**, *supra*; **Moral**, *supra*. The Supreme Court's acceptance of this specific legal question in **Lozman** demonstrates it remains unsettled. It does not stand to reason that this Court could find it was "clearly established" at the time of the 2016 arrest that Plaintiff had a First Amendment right to be free from a retaliatory arrest otherwise supported by probable cause, when the Supreme Court "expressly declined to decide" the existence of the right in 2012 and the Tenth Circuit granted qualified immunity on that basis at least twice in 2014.

Moving on from the probable cause issue, Defendants have demonstrated Plaintiff's failure to plead a constitutional violation, and no clearly established right can be identified, nor are Defendants aware of any United States Supreme Court or Tenth Circuit precedent that would indicate Defendants were on notice that any facts alleged in the Complaint were ever before recognized as a Constitutional violation. The existence of probable cause for a variety of criminal violations suggests reasonable officers in Defendants' position would similarly have arrested Plaintiff regardless of his "protests." **Whitington v. Lawson**, No. 06-cv-00759-LTB-CBS, 2009 WL 3497791, at *3 (D. Colo.

Oct. 29. 2009). Even if the Court concludes otherwise, there need only have been "arguable probable cause" at the time to entitle Defendants to immunity. *Cortez*, 478 F.3d at 1120-21. ("Law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.").

### III.     Plaintiff cannot sustain his wrongful arrest claim.

#### A.  Plaintiff's allegations fail to state a claim.

Under Colorado law, a claim for false arrest will not lie if an officer has a valid warrant or probable cause to believe that an offense has been committed and that the person who was arrested committed it. *Enright v. Groves*, 39 Colo. App. 39, 560 P.2d 851, 852 (Colo. App. 1977). "In evaluating the existence of probable cause, we consider whether the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. Section II, B contains a comprehensive discussion of the applicable law regarding probable cause and Plaintiff's allegations which demonstrate its existence for his arrest.

The allegation the charges were later dismissed by the prosecutor makes no difference in a Fourth Amendment unlawful arrest analysis. *See Fogarty*, 523 F.3d at 1156. Additionally, the Complaint fails to allege sufficient personal participation by Defendants Howard and Brough. Plaintiff alleges they were at the scene, and Defendant Brough read a document and Defendant Howard spoke with Defendant Chernak. Plaintiff does not allege they made the decision to arrest him or affected his arrest; their mere presence at the scene does not establish a constitutional violation. *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006),

B. Defendants are entitled to qualified immunity.

As argued above, Defendants are entitled to qualified immunity because they did not violate any of Plaintiff's constitutional rights. Plaintiff's unlawful arrest allegations do not suffice to overcome the qualified immunity afforded the Defendants, and nowhere does Plaintiff offer any indication that any Defendant engaged in any activity that could be construed as constituting behavior earlier determined to be an established violation of any recognized constitutional right. Moreover, the existence of probable cause for the arrest entitles a defendant to qualified immunity from a false arrest claim. ***Wilder v. Turner***, 490 F.3d 810, 813 (10th Cir. 2007). Plaintiff's arrest is constitutional so long as Defendant had arguable probable cause. ***Stonecipher v. Valles***, 759 F.3d 1134, 1141 (10th Cir. 2014). Defendants incorporate the probable cause arguments in Section II, B.

**IV.     Plaintiff's malicious prosecution fails as a matter of law.**

A. The allegations in the Complaint fail to meet the elements of the claim.

The elements of a §1983 malicious prosecution claim are: (1) defendant caused plaintiff's continued confinement or prosecution; (2) original action terminated in plaintiff's favor; (3) no probable cause supported original arrest, confinement, or prosecution; and (4) plaintiff sustained damages. ***Wilkins v. DeReyes***, 528 F.3d 790 (10th Cir. 2008).

Regarding the first element, Defendants did not cause Plaintiff's continued confinement. The probable cause determination was approved a judge,[8] and the Complaint alleges it was the prosecutor who made the determination to go forward, and

---

[8] The Order stating "probable cause found" signed by Magistrate Matthew Richard Zehe on January 28, 2016 is attached as Exhibit A. ***Pace v. Swerdlow***, 519 F.3d 1067, 1072 (10th Cir. 2008) (stating a court may properly consider facts subject to judicial notice, state court pleadings, and matters of public record without converting a motion to dismiss into a motion for summary judgment).

then to dismiss, the charges. These independent intermediaries attenuate the officers from the prosecution. *See, e.g.,* **Buehler v. City of Austin/Austin Police Dep't**, 824 F.3d 548, 553 (5th Cir. 2016). Defendants could only be subject to a malicious prosecution claim where they "conceal and misrepresent material facts to the district attorney." *See* **Schoenfeld v. Thompson**, No. 16-cv-2630-MSK-NYW, 2017 U.S. Dist. LEXIS 113172 (D. Colo. June 7, 2017). The only such allegations in the Complaint are purely conclusory and unsupported by any factual description.

Regarding the second element, the Complaint alleges the prosecutor dismissed the charges "in circumstances suggestive of Plaintiff's innocence." [ECF 1, ¶66-67, 90.] Plaintiff fails to describe any detail surrounding the dismissal and, thus, has failed to plead sufficient facts the original charge was terminated in his favor. **Schoenfeld**, 2017 U.S. Dist. LEXIS 113172 at *18-19 (holding plaintiff's characterization of charges as "false, groundless, and frivolous" is conclusory and fails to state claim).

Plaintiff's claim also fails on the third element. As argued *supra*, the Complaint's allegations demonstrate probable cause existed to arrest Plaintiff for numerous criminal offenses. Even if this Court cannot determine from the allegations of the Complaint that probable cause existed for each of the charges against Plaintiff, the existence of probable cause for any of the charges precludes his malicious prosecution claim with respect to other charges arising out of the same set of facts. **Kossler v. Crisanti**, 564 F.3d 181, 193-94, n. 8 (3d Cir. 2009) (holding probable cause to pursue one charge "preclude[s] the plaintiff from proceeding with [a] malicious prosecution claim with respect to any other charge brought simultaneously against her and arising out of the same set of facts."

B. <u>Defendants are entitled to qualified immunity</u>.

The Tenth Circuit recently acknowledged the lack of clearly established law regarding whether a malicious prosecution claim exists when one charge is supported by probable cause but other simultaneous charges arising from the same set of facts are not. ***Van De Weghe v. Chambers***, 569 Fed. Appx. 617, 619-620 (10th Cir. 2014). Citing the lack of a binding opinion from the Supreme Court, uncertain signals from the Tenth Circuit and other courts unmistakably divided, the Court posited, "it becomes difficult to conjure how Mr. Van De Weghe might have cleared the 'clearly established law' hurdle even if he had tried." Plaintiff in this case is in no different position. *See* arguments regarding probable cause, *supra* at II, B. A finding that Plaintiff's allegations demonstrate a basis for any charge establishes Defendants' entitlement to qualified immunity from the malicious prosecution claim. *Id.* Plaintiff's malicious prosecution allegations cannot overcome Defendants' qualified immunity, Plaintiff offers no indication that any Defendant engaged in any activity that could be construed as constituting behavior earlier determined to be an established violation of a recognized constitutional right.

In conclusion, for all of the foregoing reasons, Defendants respectfully request this Court dismiss Plaintiff's claims against them in their entirety with prejudice, and for all other and further relief as this Court deems proper.

Dated: April 4, 2018.  Respectfully submitted,

s/ *Christina S. Gunn*
Thomas J. Lyons, Esq.
Christina S. Gunn, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300, Denver, CO 80202
303-628-3300 /Fax: 303-628-3368
lyonst@hallevans.com /gunnc@hallevans.com

## **CERTIFICATE OF SERVICE (CM/ECF)**

   I HEREBY CERTIFY that on the 4th day of April, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Raymond K. Bryant
raymond@rightslitigation.com

               s/ Nicole Marion, Legal Assistant to
               Christina S. Gunn, Esq. of
               Hall & Evans, L.L.C.