IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00217-REB-KLM

WILLIAM MONTGOMERY,

     Plaintiff,

v.

MATTHEW CHERNAK,
MIKE HOWARD, and
MATTHEW BROUGH,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Motion to Dismiss** [#17][1] (the

"Motion").  Plaintiff filed a Response [#24] in opposition to the Motion, and Defendants filed

a Reply [#28].  Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1(c), the

Motion has been referred to this Court for a recommendation regarding disposition.  *See*

[#19].  The Court has reviewed the Amended Complaint [#14], Motion [#17], Response

[#24], Reply [#28], the entire case file, and the applicable law, and is sufficiently advised

in the premises.  For the reasons set forth below, the Court respectfully  **RECOMMENDS**

that the Motion [#17] be **GRANTED**.

---

[1]  "[#17]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF).  This convention is used throughout this Recommendation.

# I. Summary of the Case[2] [3]

Plaintiff William Montgomery is a resident of Colorado who has "been known as an activist for homeless populations in Fort Collins" and was "considered to be a troublemaker by the Fort Collins police" for his activism. *Am. Compl.* [#14] ¶¶ 2, 9. He brings this suit against Matthew Chernak ("Chernak"), Mike Howard ("Howard"), and Matthew Brough ("Brough"), officers with the Fort Collins Police Department (collectively, the "Defendants"). *Id.* ¶¶ 10-12. On April 25, 2018, Plaintiff filed the Amended Complaint (the "Complaint"), asserting four[4] claims against Defendants arising from Plaintiff's arrest on January 28, 2016. *Id.* ¶¶ 71-94. Plaintiff brings First Amendment retaliatory arrest and prosecution claims against Defendants Chernak and Howard. *Id.* ¶¶ 71-76. In addition, Plaintiff brings Fourth Amendment claims of unlawful arrest, wrongful detention, and malicious prosecution against all three Defendants. *Id.* ¶¶ 77-94. Plaintiff brings his claims under 42 U.S.C. § 1983 and asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* ¶¶ 5, 6. Plaintiff seeks compensatory damages, punitive damages, interest, costs, expert

---

[2] All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[3] Defendants ask that the Court consider Plaintiff's prior Complaint [#1] in addressing the the instant Motion [#17], arguing that the Amended Complaint [#14] "made no changes to claims or legal theories underlying the complaint, but merely omitted those facts which demonstrate probable cause." [#17] at 4. Generally, "an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect[.]" *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (internal quotation marks and citations omitted); *see Wade v. City of Haileyville*, No. 14-cv-294-JHP, 2015 WL 4759389, at *2 (E.D. Okla. Aug. 12, 2015) (declining to address allegations in the original complaint where an amended complaint was filed). Defendant does not cite any Tenth Circuit authority supporting its request that the Court review the original Complaint [#1] in addressing the Motion [#17]. Therefore, the Court declines to do so and limits its analysis to the Amended Complaint [#14] in this Recommendation.

[4] The Court construes Plaintiff's "first claim for relief" as two separate claims, namely, retaliatory arrest and retaliatory prosecution. *See Am. Compl.* [#14] ¶¶ 71-76.

witness fees, reasonable attorney fees, "and any other and further relief that this Court shall deem just and proper." *Id.* at 23.

## A. Public Plaza in Fort Collins

Plaintiff's claims concern a public plaza located in the City of Fort Collins and a chain link fence that was constructed thereon. *Id.* ¶¶ 14-16. Plaintiff begins his Amended Complaint with a lengthy recitation of the history of the plaza and the fence which the Court summarizes insofar as it is relevant to Plaintiff's claims.

According to Plaintiff, the plaza was for public use and, "at some point . . . became regularly used by homeless members of the public who sought a place to congregate, rest, and socialize." *Id.* ¶¶ 16-17. The plaza "was well-known by officers of the Fort Collins Police Department[,] especially those who were responsible for patrolling the area and/or who were regularly dispatched to the location" because of complaints concerning the growing homeless population. *Id.* ¶¶ 19-21. According to Plaintiff, each Defendant "regularly patrolled and/or were dispatched to the area and knew the area well[,]" and "knew the public plaza was public property." *Id.* ¶ 22.

On or before January 11, 2016, a private company that was constructing buildings near the plaza built "a six-foot chain-link fence around the public plaza to block the homeless from accessing or congregating in the public space." *Id.* ¶ 23. According to Plaintiff, city officials of Fort Collins were displeased with the fence and emailed the company to express their concerns. *Id.* ¶¶ 26-27. Specifically, on January 26, 2016, Rob Mosbey ("Mosbey"), Chief Construction Inspector for the City of Fort Collins, sent an email advising the company "that the placement of the fence blocked public property, was an illegal encroachment, and must be removed." *Id.* ¶ 28.

Between January 11 and 26 of 2016, Plaintiff became aware of the fence and "contacted the City Planner's office for an explanation regarding the fence." *Id.* ¶ 29. On or about January 26, 2016, Chief Inspector Mosbey informed Plaintiff "that the public plaza remained public property within a public right-of-way, that the chain-link fence was an illegal obstruction, and that Inspector Mosbey had ordered [the company] to remove the fence." *Id.* ¶ 30. On or about January 27, 2016, Chief Inspector Mosbey provided Plaintiff with a paper copy of the email exchange "pertaining to the city representative's official communication that the area remained public property, that the fence was an illegal obstruction, and that the fence must be removed." *Id.* ¶ 31. In light of this information and with "proof of Inspector Mosbey's conclusions and orders regarding the illegal fence," Plaintiff began visiting the plaza again, climbing the fence each time, and "spread[ing] the word that the fence was illegal and that the space continued to remain a place where public visitors should be permitted access and public use." *Id.* ¶ 32. Ultimately, after the incident of Plaintiff's arrest summarized below, the fence was removed from the plaza on February 16, 2016, as had been ordered by Chief Inspector Mosbey. *Id.* ¶ 66.

## B.    January 28, 2016 Arrest

Plaintiff's claims in this case are premised on the following incident and subsequent events. On January 28, 2016, Defendants were dispatched to a 7-11 located near the plaza for a trespass complaint against Melvin Swett ("Swett"). *Id.* ¶ 33. When Defendants arrived, Plaintiff was conversing with Mr. Swett on a public sidewalk outside of the 7-11. *Id.* ¶ 34. According to Plaintiff, Defendants Howard and Chernak "approached Mr. Swett and began asking questions in a voluntary consensual encounter." *Id.* ¶ 35. Defendants "did not convey to Mr. Swett that he was being detained[ ]" and therefore, Plaintiff

"questioned whether the officers were detaining Mr. Swett and/or had reasonable suspicion to believe Mr. Swett had committed any crime." *Id.* Defendants Howard and Chernak "expressed visible and audible annoyance with Plaintiff's questions and criticisms. Defendant Howard responded to Plaintiff's speech with a directive to leave the area." *Id.* ¶ 36.

Plaintiff states that he complied with Defendant Howard's request by walking to the nearby public plaza, climbing the surrounding fence, and watching the Defendants' interaction with Mr. Swett "for any evidence of mistreatment." *Id.* ¶ 37. Plaintiff states that, by standing within the plaza, "he thought[ ] he could not reasonably be perceived as interfering, since a fence physically separated him from the officers." *Id.* Moreover, Plaintiff "saw his presence within the public plaza as an opportunity to raise awareness to the issues pertaining to the illegal fence on public land." *Id.*

Plaintiff alleges that "Defendants Howard and Chernak took obvious offense to Plaintiff's criticism of the officers and his continued observation of the police interaction after they told him to leave, which they viewed as disobedience and a challenge to their authority." *Id.* ¶ 38. Plaintiff avers that, because of this, Defendants "decided to punish and retaliate against him, by manufacturing a pretextual reason to arrest Plaintiff." *Id.* Seeing the fence surrounding the plaza, Defendants Howard and Chernak "discussed with each other that the fence might provide them an illusory justification to assert that Plaintiff was trespassing." *Id.* ¶ 39.

Defendant Howard then approached the fence and told Plaintiff "that he was trespassing and to provide his name and date of birth." *Id.* ¶ 41. "Plaintiff verbally questioned the determination that he was trespassing by telling Defendant Howard and

Chernak that he was allowed to be present in the public plaza because it was part of a public park and/or right-of-way, that the fence was an illegal encroachment designed to discriminatorily keep homeless people out, and that he had spoken to the city's Chief Inspector and confirmed that he was allowed to be present there." *Id.* At some point during this explanation, Plaintiff provided his name which Defendants used to conduct a background search. *Id.* ¶ 42. Plaintiff overheard his date of birth being transmitted over Defendants' police radio and confirmed that date was correct. *Id.*

Defendants Howard and Chernak then told Plaintiff that he was going to be taken into custody and charged with trespass. *Id.* ¶ 43. At this time, Defendant Brough arrived to assist and the Defendants asked Plaintiff to climb back over the fence so that they could take him into custody. *Id.* Plaintiff did not comply with this request, "verbally protest[ing] the officers' conclusions and[,] continu[ing] to provide information to the three officers [to] indicat[e] that he was not breaking the law." *Id.* ¶ 44. Plaintiff reiterated "the nature of the property, the illegal fence, and his discussion with Inspector Mosbey, to Defendant Brough;" and informed the Defendants that he possessed the email from the City Inspector's Office which would prove "the truth about the nature of the property and his lawful presence there." *Id.* ¶¶ 44-45.

Once it became clear to Plaintiff that Defendants were not listening to or interested in Plaintiff's explanation, "Plaintiff yelled out to his brother, who was parked across the street in a white van observing the incident, [and asked] him to bring the email proof for the officers to see." *Id.* ¶ 47. Plaintiff's brother approached the scene and provided the email from Inspector Mosbey to Defendant Brough, who read the email in front of Plaintiff and then handed the email to Defendant Chernak "who also looked at it." *Id.* ¶¶ 48-49. Plaintiff

alleges that, because of this, "both officers knew or should have known that the email provided exculpatory evidence demonstrating that Plaintiff could not have been trespassing by being present in the public plaza." *Id.* ¶ 49.

After reading the email, Defendants Chernak and Howard walked away from the plaza outside of the audible range of Plaintiff and nearby witnesses. *Id.* ¶ 50. It was here, according to Plaintiff, that Defendants Chernak and Howard "discussed and agreed to charge Plaintiff [ ] with anything and everything that they believe[d] they could illusorily justify to their supervising sergeant, in order to punish Plaintiff for his speech, criticism, and perceived challenge to the Defendant officers." *Id.* ¶ 51. Further, "[t]he two agreed to charge Plaintiff with not only trespass, but also other crimes that were not supported by probable cause, including obstruction, resisting arrest, and disorderly conduct." *Id.* Accordingly, "[w]hen the two officers returned, they said something to Defendant Brough, and the three appeared resolved to act in furtherance of a common plan of action." *Id.*

Shortly thereafter, a different officer arrived with bolt cutters and cut the lock to the gate that opened up to the plaza. *Id.* ¶ 52. The three Defendants "then cooperatively placed hands on Plaintiff," handcuffed him, and took him into custody. *Id.* "Plaintiff did not, at any time, physically resist or otherwise physically fight or challenge the officers" and "only verbally voiced his concerns and criticisms to [the] officers and surrounding persons about the unlawful nature of the arrest." *Id.* ¶ 53. While Plaintiff was being transported to the police station by Defendant Chernak, Plaintiff asked Defendant Chernak why he had not acted on the exculpatory evidence of the email that was provided. *Id.* ¶ 54. According to Plaintiff, Defendant Chernak responded "facetiously, that 'you were being too loud for me to read it.'" *Id.* Plaintiff then explained again that the email showed that the area

remained public property and criticized Defendant Chernak for wrongfully arresting him. *Id.*

Approximately forty-five minutes later, "Defendant Chernak filed a warrantless arrest affidavit asserting that Plaintiff committed the crimes of Trespass, Obstruction, Resisting Arrest, Disorderly Conduct, and Violation of Bail Bond." *Id.* ¶ 56. Plaintiff alleges that Defendant Chernak "asserted false facts in the affidavit, including that Plaintiff (a) 'interfered' with the officers' earlier contact with another person, (b) 'un-lawfully entered' the fenced-in area, (c) 'refused to identify himself,' and (d) 'required' the officers to use bolt cutters to gain entry to the fenced-in area." *Id.* Plaintiff further alleges that Defendant Chernak "purposefully omitted" the following information: that the property Plaintiff entered was a public area operated and maintained by the City of Fort Collins; that Plaintiff had provided exculpatory evidence to demonstrate that the property remained public despite the illegally erected fence; that Plaintiff had permission to be present there; that Defendant Chernak did not have any information to indicate there was a private owner of the property; and how Defendant Chernak came to the conclusion that Plaintiff "unlawfully" entered the property. *Id.*

"On information and belief," Plaintiff alleges that "all three Defendant[s] met and discussed the charges, and agreed that they would assert false factual information that would illusorily support the wrongful charges, including inter alia, that Plaintiff (a) 'interfered' with the officers' earlier contact with another person, (b) 'unlawfully' entered private property, (c) attempted to use the fence as an 'obstruction' to keep officers from arresting him, (d) yelled at the top of his lungs to wake/disturb neighbors, (e) resisted arrest, and (f) violated the terms of an earlier bond condition by not remaining lawful." *Id.* ¶ 57. After this

discussion, Plaintiff alleges that Defendants "drafted police reports including the false, exaggerated, and misrepresentative information in order to cause Plaintiff to be detained, to cover up and conceal their own abuse of authority, and to continue to punish Plaintiff for what they perceived as challenges to their authority and annoyance of the speech of the protester." *Id.* ¶ 58. As a result of the allegedly wrongful charges and arrest, Plaintiff spent three days in jail from January 28 through January 30, 2016. *Id.* ¶ 60.

Shortly thereafter, on or about February 1, 2016, Plaintiff alleges that Defendant Chernak filed a separate affidavit in Larimer County Court indicating that Plaintiff had violated a condition of his bail bond from an earlier case so that the court would revoke Plaintiff's bond. *Id.* ¶ 61. "The affidavit asserted that Plaintiff had committed the five offenses listed in the case, including violation of bail bond conditions, and that he would act as a witness for the offenses and provide all discoverable materials in support of the charges." *Id.* Plaintiff states that, on February 8, 2016, the Court Services Specialist II for the Larimer County Pretrial Services Program was "influenced by Defendant Chernak's (and the other two Defendant Officers') assertions" of criminal activity and cited those assertions as a basis for Plaintiff's noncompliance of the bond conditions and a petition to revoke the bond. *Id.* ¶ 65. On or about February 18, 2016, the criminal court granted the petition to revoke Plaintiff's bond based on Defendants' assertions of criminal conduct and, as a result, a warrant was issued for Plaintiff's arrest and he was incarcerated from March 25 through April 19, 2016. *Id.* ¶ 67.

Separately, during the criminal prosecution of the January 28, 2016 charges, Plaintiff alleges that the prosecutor in that case was influenced by Defendants' false statements and ignored the exculpatory email to which Plaintiff had directed him. *Id.* ¶ 62-63. "As a result,

the prosecution dragged on, unnecessarily, for almost two years." *Id.* ¶ 63. Ultimately, in July of 2017, Plaintiff states that "the prosecutor verbally acknowledged . . . that [Plaintiff] was correct about the nature of the public property and his presence there[ ]" and "admitted contacting the city attorney's office [which confirmed] that the area was public property." *Id.* ¶ 68. Accordingly, on or about August 31, 2017, the charge of trespass against Plaintiff was dismissed and, on or about November 16, 2017, all remaining charges from the January 28, 2016 incident were also dismissed. *Id.* ¶¶ 69-70.

## C.    The Motion [#17]

Defendants filed the instant Motion [#17] on May 9, 2018. In the Motion, Defendants seek dismissal of Plaintiff's Amended Complaint [#14] pursuant to Fed. R. Civ. P. 12(b)(6). Defendants contend that dismissal is appropriate for the following reasons: (1) Plaintiff's claims pursuant to the First and Fourth Amendments are insufficiently pled, (2) Defendants are entitled to qualified immunity as to each claim, and (3) Plaintiff fails to allege personal participation by each Defendant.

## II. Standard of Review

## A.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to

state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation omitted) (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted) (internal quotation marks omitted). Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678.

**B.     Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Herrera v. City of Alburquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ). When qualified immunity is asserted, a Plaintiff must show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson*, 555 U.S. at 231). "The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on the substantive law regarding that right." *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1255 (D. Colo. 2010). "With regard to the second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Herrera*, 589 F.3d at 1070 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008) ). Judges are permitted to use their sound discretion in deciding which of the prongs should be addressed first. *Davis*, 705 F. Supp. 2d at 1255 (citing Pearson, 555 U.S. at 231).

### III.  Analysis

**A.     First Amendment Retaliation Claims**

Plaintiff generally asserts that Defendants arrested him in retaliation for Plaintiff's

exercise of his First Amendment rights.  *Am. Compl.* [#14] ¶¶ 71-76.  Specifically, Plaintiff

alleges that, at the time Defendants "took action to seize and detain Plaintiff [ ], he had

committed no crime in the deputy's presence; he had only expressed verbal criticism and

questioning of the officers, and, otherwise, entered public land to raise awareness to a

public access issue pertaining to the land."  *Id.* ¶ 72.  Defendants argue that they are

entitled to qualified immunity on Plaintiff's First Amendment retaliatory arrest claim because

(1) Plaintiff fails to allege a claim for retaliatory arrest under the First Amendment, and (2)

the law was not "clearly established at the time of the 2016 arrest that Plaintiff had a First

Amendment right to be free from a retaliatory arrest otherwise supported by probable

cause[.]"  *Motion* [#17] at 3-9.

To state a claim for unlawful retaliation under the First Amendment, a plaintiff must

allege that: "(1) he was engaged in constitutionally protected activity, (2) the government's

actions caused him injury that would chill a person of ordinary firmness from continuing to

engage in that activity, and (3) the government's actions were substantially motivated as

a response to his constitutionally protected conduct."  *Mocek v. City of Albuquerque*, 813

F.3d 912, 930 (10th Cir. 2015) (quoting *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155,

1165 (10th Cir.2009)).

### 1.    Retaliatory Arrest

Given that the Court finds *infra* that Plaintiff has alleged sufficient facts to support

a reasonable inference that Defendants had probable cause for the arrest, the Court first

addresses whether Plaintiff has shown that his right to be free from a retaliatory arrest

otherwise supported by probable cause was clearly established at the time of the 2016

arrest.  *Martinez*, 563 F.3d at 1088; *see Davis*, 705 F. Supp. 2d at 1255 (noting that courts

may use their discretion in deciding which prong of the qualified immunity analysis should be addressed first) (citing *Pearson*, 555 U.S. at 231)).

As stated above, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Herrera*, 589 F.3d at 1070 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008)). A plaintiff may ordinarily show that the constitutional right was clearly established by identifying either (1) an on-point Supreme Court decision, (2) an on-point published Tenth Circuit decision, or (3) favorable "clearly established weight of authority from other courts." *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). "However, we do not always require case law on point, and the Supreme Court has warned that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (internal quotation marks and citations omitted). "We have therefore adopted a sliding scale to determine when law is clearly established." *Id.* "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* at 1135-36. It is not necessary to show that "the very action in question has previously been held unlawful, [but] in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 1136 (internal alterations and quotation marks omitted).

In his Response, Plaintiff argues that "it has been clearly established since at least 2011 that, in the Tenth Circuit, the presence of probable cause is not fatal to a First Amendment Retaliation claim for retaliatory arrest." [#24] at 23. For this proposition, Plaintiff cites *Howards v. McLaughlin*, 634 F.3d 1131 (10th Cir. 2011), which Plaintiff

acknowledges was overruled on qualified immunity grounds by the Supreme Court in *Reichle v. Howards,* 556 U.S. 658 (2012). *Id.* at 24. Plaintiff avers, however, that the Supreme Court's holding in *Reichle* was limited in that the Court only found that "at the time of Howards' arrest [in 2006], it was not clearly established that an arrest supported by probable cause could violate the First Amendment." *Id.* (quoting *Reichle*, 566 U.S. at 2093). According to Plaintiff, "[b]ecause the [Supreme Court] elected not to overturn the Tenth Circuit's decision on the basis of whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest, the original Tenth Circuit holding in *Howards* that probable cause is not a bar remains the clearly established law in the Tenth Circuit . . .. Thus, even though the plaintiff in *Howards* could not get over the hurdle of qualified immunity (because the Supreme Court found that no case prior to *Howards* clearly established the law), [Plaintiff] can claim the right today for actions that occurred in 2016." *Id.*

Defendants argue that Plaintiff's analysis of *Reichle* is an oversimplification and that "the state of the law in [*Reichle's*] wake is anything but clearly established, as evidenced by the Supreme Court's recent decision in" *Lozman*, 138 S.Ct. 1945 (2018). *Lozman* is a decision in which the Supreme Court addressed the issue of whether a claim for retaliatory arrest could proceed despite the existence of probable cause to arrest. In *Lozman*, the Court narrowly decided the issue, finding a retaliatory arrest suit could proceed where the plaintiff alleged an official policy of retaliation "bearing little relation to the criminal offense for which the arrest is made," while noting that the "Court need not, and does not, address the elements required to prove a retaliatory arrest claim in other contexts." *Id.* at 1954-55 ("[W]hether in a retaliatory arrest case [suit should be barred] where probable cause exists

. . . must await a different case."). Accordingly, *Lozman* is applicable to the present issue only insofar as to show that the present issue has not been fully resolved by the Supreme Court.

The Tenth Circuit held in *Deloach v. Bevers*, 922 F.2d 618, 621-22 (10th Cir. 1990), that an arrest supported by probable cause violates the First Amendment if evidence showed a retaliatory motive for the arrest. Relying on *Deloach*, the Tenth Circuit held in *Howards* that a person arrested with probable cause in 2006 may still state a claim for retaliatory arrest. However, one year later the Supreme Court decided *Reichle*.

In *Reichle*, the Supreme Court "granted certiorari on two questions: whether a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support the arrest, and whether clearly established law at the time of [the plaintiff's] arrest so held." 556 U.S. at 663. The Court addressed only the second question, finding that the plaintiff had not satisfied the "clearly established" standard under qualified immunity. *Id.* at 664-65. "This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of [the plaintiff's] arrest [in 2006]." *Id.* Accordingly, *Reichle* did not reach the issue in *Howards* (and therefore, *Deloach*) of whether a plaintiff may claim the right to be free from a retaliatory arrest supported by probable cause. Rather, the Court determined that its decision in *Hartman v. Moore*, 547 U.S. 250 (2006), which held that a claim for retaliatory *prosecution* must show lack of probable cause, made the qualified immunity analysis with regard to a retaliatory arrest claim less than clear: "At the time of Howards' arrest [in 2006], *Hartman's* impact on the Tenth Circuit's precedent governing retaliatory arrests [including *Deloach*] was far from clear. Although the facts of *Hartman*

-16-

involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of *Hartman* also applied to arrests." *Reichle*, 566 U.S. at 666 (emphasis added). Since *Reichle*, neither the Supreme Court nor the Tenth Circuit has settled this specific issue on the merits. *See, e.g., Wilson v. Vill. of Los Lunas*, 572 F. App'x 635, 643 (10th Cir. 2014) (unpublished) (noting that *Howard* was reversed by *Reichle* without clearly establishing any right); *Moral v. Hagen*, 553 F. App'x 839, 840 (10th Cir. 2014) (unpublished) ("Only recently the Supreme Court [in *Reichle*] explained that it remains unsettled under current law whether an officer violates the Fourth Amendment by initiating an arrest for retaliatory reasons when the arrest itself happens to be supported, as an objective matter, by probable cause.").

Generally, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Therefore, in light of the uncertainty created by *Reichle*, the Court agrees with Defendants that a reasonable officer could not conclude that *Howard* clearly establishes beyond debate that a post-2011 arrest supported by probable cause may premise a claim for retaliatory arrest under the First Amendment. *See Fenn v. City of Truth or Consequences*, No. 2:18-cv-00634-WJ-GW, 2019 WL 943518, at *6 (D.N.M. Feb. 26, 2019) (finding that the law was not clearly established for an arrest in June 2017); *Brewer v. Ross*, No. 1:15-cv-87-TC, 2018 WL 3128998, at *8 (D. Utah June 26, 2018) (finding that the law was not clearly established for an arrest in September 2011); *see also Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018) (holding that *Reichle* is dispositive of First Amendment retaliatory arrest claim); *Marshall v. City of Farmington Hills*, 693 F. App'x 417, 426 (6th Cir. 2017) (same);

*Pegg v. Herrnberger*, 845 F.3d 112, 119 (4th Cir. 2017) (same). Accordingly, the Court

finds that this right is not "clearly established," and that Defendants are entitled to qualified

immunity.[5] *Saucier*, 533 U.S. at 202. Therefore, the Court **recommends** that the Motion

[#17] be **granted** to the extent that it requests that the claim of retaliatory arrest against

Defendants be **dismissed with prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127

(10th Cir. 1990) (stating that dismissal with prejudice is appropriate if issues have been

raised which, upon further investigation and development, would not raise substantial

issues).

### 2. Retaliatory Prosecution

As noted above, the Supreme Court held in *Hartman*, 547 U.S. at 261-66, that where

the retaliatory action taken is a criminal prosecution, a plaintiff bringing suit under § 1983

must plead and prove a fourth element: lack of probable cause for the allegedly retaliatory

prosecution. Accordingly, given the Court's finding *infra* of probable cause for Plaintiff's

arrest, the Court finds that Plaintiff has failed to allege a violation of a constitutional right

and that therefore, Defendants are entitled to qualified immunity on Plaintiff's retaliatory

prosecution claim. Therefore, the Court **recommends** that the Motion [#17] be **granted**

to the extent that it requests that the claim of retaliatory prosecution against Defendants be

**dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

### B. Fourth Amendment Claim for Unlawful Arrest

Plaintiff's second claim for relief is for unlawful arrest under the Fourth Amendment.

---

[5] Because the Court finds that the law was not clearly established at the time of Plaintiff's arrest, the Court need not consider the first prong of the qualified immunity test. *See Davis*, 705 F. Supp. 2d at 1255 (citing *Pearson*, 555 U.S. at 231).

*Am. Compl.* [#14] ¶¶ 77-83. Defendants assert that they are entitled to qualified immunity as to this claim. *Motion* [#17] at 11. Therefore, under the qualified immunity analysis, the Court must address whether Plaintiff's Fourth Amendment rights were violated. *See Martinez*, 563 F.3d at 1088. To maintain a false arrest claim under § 1983, a plaintiff must demonstrate the elements of the common law tort of false arrest. *See Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996); *see also Walker v. Briley*, 140 F.Supp.2d 1249, 1257 n.6 (N.D. Ala. 2001) (stating that while the "core issue with respect to any section 1983 claim is whether a constitutional violation occurred . . . [the] common law is often a proper starting point for examining the elements and immunities applicable to section 1983 claims"). In Colorado, the common law tort of false arrest contains three elements. *Atencio v. King Soopers*, No. 11-cv-02195-PAB-MEH, 2012 WL 6043602, at *6 (D.Colo. Dec. 5, 2012).

> [T]o establish a false arrest claim, a plaintiff must prove [that] . . . (1) the defendants intended to restrict plaintiff's freedom of movement; (2) plaintiff's freedom of movement was restricted for a period of time, however short, by an act of defendants; and (3) plaintiff was aware that [his or her] freedom of movement was restricted.

*Id.* (citing *Goodboe v. Gabriella*, 663 P.2d 1051, 1055–56 (Colo. App. 1983)). However, a claim for false arrest ultimately fails if there was probable cause for the arrest. *Rose v. City & Cnty. of Denver*, 990 P.2d 1120, 1123 (Colo. App. 1999). Defendants appear to concede that Plaintiff has sufficiently alleged the three elements of his wrongful arrest claim but argue that the Amended Complaint demonstrates that probable cause existed for the arrest. *Motion* [#17] at 10-11.

"When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable

cause existed to make the arrest." *Robertson v. Las Animas Cty. Sheriff's Dept.*, 500 F.3d 1185, 1191 (10th Cir. 2007) (citing *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

To determine whether probable cause exists, the Court must consider whether the facts and circumstances within the officers' knowledge at the time of the arrest were sufficient for a reasonable person to believe that an offense had been or was being committed. *Fogarty*, 523 F.3d at 1156. "Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Id.* at 1116. The Court "assess[es] probable cause under an objective standard of reasonableness," and must therefore determine whether "'the circumstances, viewed objectively, justify' the arrest." *Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015) (quoting *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006)). An officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence or to pursue the possibility that the suspected offender is innocent. *See Simkunas v. Tardi*, 930 F.2d 1287, 1292 (7th Cir. 1991); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990); *Franco-de Jerez v. Burgos*, 876 F.2d 1038, 1042 (1st Cir. 1989). Moreover, an arresting officer is not required to hold a trial at the scene of an apparent crime to determine the credibility of witnesses. *See U.S. v. Torres-Castro*, 374 F. Supp. 2d 994, 1010-11 (D.N.M. 2005).

Here, Plaintiff asserts his Fourth Amendment false arrest claim generally against

Defendants Chernak and Howard.   In short, Plaintiff alleges that Defendant Howard directed Plaintiff to leave the area near the 7-11 after Plaintiff questioned Defendant Chernak's and Defendant Howard's interaction with Mr. Swett. *Am. Compl.* [#14] ¶¶ 35-36. In response to this directive, Plaintiff walked to the nearby plaza and proceeded to climb over the enclosed chain link fence, the gate to which Plaintiff later acknowledges was locked and required bolt cutters to open. *Id.* ¶¶ 37, 52.   As an initial matter, even construing the Amended Complaint in a light most favorable to Plaintiff, the Court finds that these allegations initially suggest that Defendants had arguable probable cause to believe Plaintiff was trespassing.  *See* C.R.S. § 18-4-503 ("A person commits the crime of second degree criminal trespass if such person [ ] [u]nlawfully enters or remains in or upon the premises of another which are enclosed in a manner designed to exclude intruders or are fenced[.]"); *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 881 (2014) (Arguable probable cause for an arrest "is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists.").

Plaintiff states that "[o]n information and belief, each of the Defendant officers regularly patrolled and/or were dispatched to the area [of the public plaza] and knew the area well." *Am. Compl.* [#14] ¶ 22.  Based on this "belief," without any factual basis, Plaintiff alleges that Defendants "knew the public plaza was public property" and thus, "knew (or should have reasonably known) that it could not be illegal for any member of the public to be present there." *Id.*  However, as Defendants rightly observe, this allegation strains plausibility in light of Plaintiff's other allegations. *Motion* [#17] at 6.

According to Plaintiff, the fence was built on or before January 11, 2016, without "city

authorization." *Am. Compl.* [#14] ¶¶ 23, 24. Plaintiff became aware of the fence between January 11 and January 26, 2016, and had to research the legality of the fence himself by contacting the City Planner's office for an explanation. *Id.* ¶ 29. On or about January 26, 2016, Plaintiff was informed that the fence was an "illegal obstruction" and that Chief Inspector Mosbey had ordered that the fence be removed. *Id.* ¶ 30. On or about January 27, 2016, Plaintiff was provided with an additional email setting forth this information and, on the very next day, climbed the fence during his encounter with Defendants. *Id.* ¶¶ 31, 33, 37. The Court agrees with Defendants that accepting these facts as true strains credulity to expect that Defendants would have known of the illegality of the fence just two days after Chief Inspector Mosbey allegedly made this determination and informed Plaintiff. *Motion* [#17] at 6; *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present" are entitled to immunity." (internal quotation marks and citation omitted)).

Moreover, the Amended Complaint contains the following conclusory allegations to suggest that Defendants Howard and Chernak knew that probable cause was lacking after Plaintiff initially climbed the fence:

> Defendants Howard and Chernak took obvious offense to Plaintiff's criticism of the officers and his continued observation of the police interaction after they told him to leave, which they viewed as disobedience and a challenge to their authority. The Officers decided to punish and retaliate against him, by manufacturing a pretextual reason to arrest Plaintiff Montgomery.

> Defendant Officers Howard and Chernak saw the fence surrounding the public plaza and discussed with each other that the fence might provide them an illusory justification to assert that Plaintiff was trespassing.

> Defendant Chernak and Howard . . . [left] the audible range of Plaintiff Montgomery and nearby witnesses [and] [o]n information and belief . . . the officers spoke about the situation, for the next few minutes. The officers,

obviously, appeared visibly upset and annoyed by Plaintiff's continued presence and communications. They discussed and agreed to charge Plaintiff Montgomery with anything and everything that they believe they could illusorily justify to their supervising sergeant, in order to punish Plaintiff for his speech, criticism, and perceived challenge to the Defendant officers. The two agreed to charge Plaintiff with not only trespass, but also other crimes that were not supported by probable cause, including obstruction, resisting arrest, and disorderly conduct.

[#14] ¶¶ 38, 39, 50-51. "In conducting a Rule 12(b)(6) analysis, the [C]ourt need not accept as true any conclusory allegations contained in the complaint." *Coburn v. Nordeen*, 72 F. App'x 744, 746 (10th Cir. 2003) (citing *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir.1998)); *see Marble v. Strecker*, No. CV-12-186-M-DWM, 2014 WL 1404896, at *6 (D. Mont. April 10, 2014) (same); *Alfred v. New Jersey*, Civil Action No. 13-0332(RBK), 2013 WL 4675536, at *6 (D. N.J. August 29, 2013) ("It is not sufficient to state, in conclusory fashion, that there was no probable cause for the prosecution."); *King v. City of New York*, No. 12-cv-2344 (NGG)(RER), 2013 WL 2285197, at *5 n.3 (E.D. N.Y. May 23, 2013) ("Plaintiff's mere conclusion that there was no probable cause does not meet the elements of a plausible claim." (citation omitted)); *Sherrod v. Travis*, No. 13-C-417, 2013 WL 593955, at *4 (N.D. Ill. February 15, 2013) (same); *Giacalone v. Pennsylvania Ins. Fraud Prevention Auth.*, Civil No. 3:11-cv-01647, 2012 WL 629437, at *4 (M.D. Pa. February 27, 2012) ("Plaintiffs' insistence that there was no probable cause for the search warrant, without any further factual allegations, is not enough to overcome the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure." (footnote omitted)); *Ghaster v. City of Rocky River*, No. 1:09CV02080, 2010 WL 2802682, at *5 (N.D. Ohio July 13, 2010) (citation omitted) (same); *Moore v. Miami-Dade Cnty.*, 502 F.Supp.2d 1224, 1234 (S.D. Fla. 2007) (citation omitted) (same); *Hann v. Michigan*, No. 05-cv-71347-DT, 2007

WL 1322328, at *7 (E.D. Mich. March 2, 2007); *Hibbard v. Gallivan*, No. 99-cv-0145E(F), 1999 WL 782174, at *2 (W.D. N.Y. September 15, 1999) (same); *Turner v. Fallen*, No. 92 C 3222, 1993 WL 15647, at *5 (N.D. Ill. January 22, 1993) (citing *Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir.1990); *Sivard v. Pulaski Cnty.*, 959 F.2d 662, 667 (7th Cir. 1992); *Streetman v. Jordan*, 918 F.2d 555, 556-57 (5th Cir. 1990) (same).

Plaintiff's additional allegations suggest that, even if Defendants initially had probable cause for the arrest, probable cause evaporated during the course of the incident when Plaintiff explained the illegality of the fence and Plaintiff's brother provided Defendants with the email from Chief Inspector Mosbey. *Am. Compl.* [#14] ¶¶ 44-49. However, accepting these allegations as true, Defendants were not required to credit Plaintiff's explanation if the Defendants reasonably believed that they still had probable cause to make the arrest despite the explanation. *Stonecipher*, 759 F.3d at 1146 (10th Cir. 2014); *see Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir.1995) ("A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988))). Moreover, the Amended Complaint provides no non-conclusory facts to suggest that there was a way for Defendants to verify the authenticity of the email or ascertain the truth of Plaintiff's explanation. *See Stonecipher*, 759 F.3d 1146.

Assuming arguendo that Plaintiff's bald assertion that probable cause was lacking is sufficient, the Court further agrees with Defendants that Plaintiff's other allegations demonstrate the existence of probable cause to charge Plaintiff with crimes. *Accord Hann*, 2007 WL 1322328, at *7 ("In short, beyond his conclusory allegation that there was no

probable cause for the indecent exposure charges, plaintiff has presented only allegations which support, rather than negate, the existence of probable cause."). In order to file charges against Plaintiff, Defendants only needed reason to believe that Plaintiff himself committed a crime. *Pringle*, 540 U.S. at 371 ("the belief of guilt must be particularized with respect to the person to be searched or seized"); *Turner*, 553 F.3d at 1345 (citation omitted) (noting that probable cause exists if an officer "had reason to believe that a crime–any crime–occurred."). Moreover, the crime which Defendants believed Plaintiff committed could have been different from the crime with which he was ultimately charged. *Turner*, 553 F.3d at 1345. The Amended Complaint contains sufficient factual allegations to show that Defendants could have reasonably found probable cause for obstructing a police officer, resisting arrest, and disorderly conduct based on Plaintiff's continued protests and refusal to leave the fenced-in area after being told he was going to be arrested. *See Am. Compl.* [#14] ¶ 43-53.

Plaintiff dedicates a substantial portion of his Response [#24] to arguing that Defendants did not have probable cause to arrest Plaintiff for four of the five criminal violations for which Plaintiff was charged. *See Response* [#24] at 6-15. Plaintiff analyzes in detail the prima facie elements of (1) Obstruction of a Police Officer, (2) Second Degree Trespass, (3) Resisting Arrest, and (4) Disorderly Conduct, to assert that none of Plaintiff's actions alleged in the Amended Complaint could be construed as probable cause for each violation. *Id*. The Court is not persuaded by Plaintiff's argument for two reasons. First, "[w]hile an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462

U.S. 213, 235, 103 S. Ct. 2317, 2330, 76 L. Ed. 2d 527 (1983) (internal quotation marks and citation omitted); *see Martin v. City of Oklahoma City*, 180 F. Supp. 3d 978, 990 (W.D. Okla. 2016) ("[T]he issue is not whether [Plaintiff] could or would be convicted for violating the [municipal ordinance], but rather whether the officer reasonably believed he was committing the offense." (internal brackets in the original) (quoting *U.S. v. Christian*, 190 F. App'x 720, 723 n. 3 (10th Cir. 2006))). Second, Plaintiff cites no legal authority for the proposition that each charge underlying an arrest must be supported by probable cause to entitle a defendant officer to qualified immunity from a wrongful arrest claim. Indeed, "'[p]robable cause need only exist as to any offense that could be charged under the circumstances.'" *Kilgore v. City of Stroud*, 158 F. App'x 944, 948 (10th Cir. 2005) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). "'[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with or whether a person is later acquitted of the crime for which she or he was arrested.'" *Id.* (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir.2005) (citation omitted); *see also Marrs v. Boles*, 51 F. Supp. 2d 1127, 1135 (D. Kan. 1998) ("If probable cause exists as to one charged crime, whether the police had probable cause to arrest for other crimes is irrelevant.").

Accordingly, even setting aside the conclusory nature of Plaintiff's allegations and the rule that probable cause need only exist for any crime, Plaintiff has failed to sufficiently allege the absence of probable cause for his alleged Fourth Amendment wrongful arrest claim.[6] Therefore, the Court **recommends** that the Motion [#17] be **granted** to the extent

---

[6] Because no constitutional right was violated with regard to Plaintiff's wrongful arrest claim, the Court need not consider the second prong of the qualified immunity test. *See Saucier*, 533 U.S.

that it requests that the claim of wrongful arrest against Defendants Chernak and Howard

be **dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

**C.    Fourth Amendment Claim for Malicious Prosecution**

The Court next addresses Plaintiff's malicious prosecution claim under the Fourth

Amendment.  Plaintiff's fourth claim generally alleges that Defendants violated Plaintiff's

Fourth Amendment right to be free from malicious prosecution. *Am. Compl.* [#14] ¶¶ 84-94.

Specifically, Plaintiff alleges that "Defendants materially misrepresented numerous pieces

of information critical to a fair determination of probable cause in the charging documents

and affidavits submitted to the court [and that] Defendants also omitted the exculpatory

evidence regarding the email and information Plaintiff provided about the nature of the

public property, the fence, and the consent he obtained from the city planner and inspector

to enter the property, which all demonstrated that Plaintiff could not have 'unlawfully'

entered and/or trespassed onto private property." *Response* [#24] at 16-17 (citing *Am.*

*Compl.* ¶¶ 53-59, 54-55).  Defendants argue that Plaintiff's malicious prosecution claim fails

as a matter of law because the Amended Complaint fails to sufficiently allege the elements

of the claim and further argue that Defendants are entitled to qualified immunity. *Motion*

[#17] at 11-13.

Like false arrest claims brought under § 1983, the Tenth Circuit looks to the common

law elements of malicious prosecution as the starting point for analysis, but ultimately

determines whether the "plaintiff has proven the deprivation of a constitutional right."

*Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007).  The establishment of a

at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Fourth Amendment claim for malicious prosecution requires the plaintiff to prove that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Lopez v. Prince*, No. 11-cv-02352-CMA-BNB, 2012 WL 3277178, at *5 (D. Colo. Aug. 9, 2012). Generally, plaintiffs cannot sue police officers for malicious prosecution under Section 1983 because "'the chain of causation is broken' between the arrest and the actual prosecution." *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1207 (D. Colo. 2006) (quoting *Taylor*, 82 F.3d at 1564). In her concurrence in *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring), Justice Ginsburg reasoned that the principal player in carrying out a prosecution is not the police officer but, rather, the prosecutor. Thus, "the anomaly lies in the reality that, under a malicious prosecution claim against an officer, 'the star player is exonerated, but the supporting actor is not.'" *Lopez*, 2012 WL 3277178, at *5 (quoting *Albright*, 510 U.S. at 279 n.5 (Ginsburg, J., concurring)). *See also Washington v. Summerville*, 127 F.3d 552, 559-60 (7th Cir. 1997). Nonetheless, malicious prosecution claims may be proper if the police officer misrepresents or conceals facts from the prosecutor, as is alleged here. *Barton*, 432 F. Supp. 2d at 1207.

In light of the Court's finding *supra* that Plaintiff has alleged sufficient facts to support a reasonable inference that Defendants had probable cause for the arrest, the Court initially finds that Plaintiff cannot establish the third element to proceed on his malicious prosecution claim. *Lopez*, 2012 WL 3277178, at *5. In his Response, Plaintiff argues that even if probable cause existed for any one of the charged crimes, "[e]ach individual criminal

charge that was asserted without legal justification provides support for a malicious prosecution claim, because there is a long history of assessing such allegations on a charge-by-charge basis." [#24] at 17-18 (citing *Miller v. Spiers*, 339 Fed. Appx. 862, 867-68 (10th Cir. 2009); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007); *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991); *Elbrader v. Blevins*, 757 F. Supp. 1174, 1180 (D. Kans. 1991); *Brown v. Willoughby*, 5 Colo. 1, 5 (Colo. 1879). However, Plaintiff also acknowledges *Van De Weghe v. Chambers*, 569 Fed. App'x 617 (10th Cir.2014), which held that the law is not clearly established in the Tenth Circuit as to whether probable cause to pursue one charge precludes a malicious prosecution claim with respect to any other charge brought simultaneously. 569 Fed. App'x at 619-20 ("[T]his court hasn't definitively spoken to the question either way."). Plaintiff asks that this Court disregard *Van De Weghe* which, according to Plaintiff, "failed to credit the deep roots of the case-by-case review found in Colorado's malicious prosecution history." *Response* [#24] at 22-23 (citing *Brown*, 5 Colo. at 5 (Colo. 1879)). Plaintiff does not sufficiently expand on this argument. *See generally Response* [#24] at 22-23.

Whether a § 1983 plaintiff can maintain a malicious prosecution claim on a charge-by-charge basis raises an issue this Court need not address. Given that there is currently no "clearly established law [in the Tenth Circuit] suggesting that a claim for malicious prosecution lies when one charge is supported by probable cause but other simultaneous charges arising from the same set of facts are not," the Court finds that Defendants are entitled to qualified immunity on Plaintiff's malicious prosecution claim. *Van De Weghe*, 569 Fed. App'x at 619-20. Therefore, the Court **recommends** that the Motion [#17] be **granted** to the extent that it requests that the claim of malicious prosecution

against Defendants be **dismissed with prejudice**. *Reynoldson*, 907 F.2d at 127.

## IV.  Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that Defendants' Motion [#17] be **GRANTED** and that Plaintiff's Amended Complaint [#14] be **DISMISSED** as outlined above.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 28, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge